[No. D019373. Fourth Dist., Div. One. Apr. 8, 1994.]

FRANCINE Y. PENDER et al., Plaintiffs and Appellants, v.
IRENE RADIN, Defendant and Respondent.

## Counsel

Rich, Sussman & Shipley and Robert L. Shipley for Plaintiffs and Appellants.

Jack R. Turner, Jr., and Michael R. Gardner for Defendant and Respondent.

## Opinion

**TODD, J.**—Francine Y. Pender and Gisele Pender (the Penders) appeal a summary judgment on their first amended complaint for malicious prosecution against Irene Radin. The Penders were among three defendants in Radin's lawsuit for breach of contract, fraud and misrepresentation that was settled when the third defendant paid Radin $25,000 and all parties agreed to waive any claim for attorney fees or costs against the opposing parties. The principal assignment of error deals with whether the settlement of the earlier suit represented a termination in favor of the Penders; the Penders contend this presented a question of material fact that precluded summary judgment. The Penders also contend the trial court, which denied Radin's first motion for summary judgment, acted without legal justification in hearing Radin's second motion for summary judgment.

### Facts

In March 1990 Radin entered into two contracts with Herbert Pender III to remodel her home. Herbert, a licensed contractor who operated the Work Store, is the son of Gisele Pender and the brother of Francine Pender.

On August 13, 1990, Radin filed a complaint for breach of contract, fraud and misrepresentation against Herbert doing business as the Work Store, and individually. This lawsuit, Radin v. Pender (Super. Ct. San Diego County, 1990, No. N48363), also named Gisele Pender and Francine Pender as defendants.

On June 3, 1991, Radin's lawsuit was settled. According to the court minutes, as written by Judge Kevin Midlam, the terms of the settlement were as follows:

"Herbert Pender to pay to the [plaintiff] the sum of $25,000 prior to the close of [b]usiness on 6/4/91—[plaintiff] to dism[iss] action in its entirety as to all defendants w[ith] prejudice—parties to bear own costs and fees. Enforceable per [Code of Civil Procedure section] 664.6."

On May 8, 1992, the Penders filed a complaint for malicious prosecution against Radin. On August 12, 1992, the Penders filed a first amended complaint for malicious prosecution against Radin; this is the operative pleading here. The Penders' first amended complaint sought compensatory damages of $17,873.25; this figure was later revised by the Penders, in response to an interrogatory, to $17,328.28—an amount that represented their legal fees and costs for Radin's lawsuit.

On October 14, 1992, Radin filed her original motion for summary judgment/summary adjudication of issues; the motion was denied because the trial court found triable issues of fact existed as to the issues proffered for determination. On March 5, 1993, Radin filed a second motion for summary judgment/summary adjudication of issues. On April 28, 1993, the trial court (1) permitted Radin to renew her summary judgment/summary adjudication motion pursuant to Code of Civil Procedure[1] section 437c, subdivision (f), and new case law; (2) granted summary adjudication of Radin's first issue, namely that the underlying action (Radin v. Pender, *supra* (No. N48363) did not terminate favorably for the Penders; and (3) accordingly, granted summary judgment in favor of Radin in the instant malicious prosecution case. On May 14, 1993, the trial court denied the Penders' motion for reconsideration.

DISCUSSION

I

The Penders contend that the trial court erred in allowing Radin to renew her motion for summary judgment/summary adjudication. We disagree.

The Penders argue that in renewing her motion Radin did not satisfy section 437c, former subdivision (f) (now subd. (f)(2)), which provides in pertinent part:

"[A] party may not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court, unless that party establishes to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion."[2]

The Penders maintain that between the filing of Radin's first motion in October 1992 and the filing of her second motion in March 1993 there were no "newly discovered facts or circumstances or a change of law" as required

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] The genesis of this language was the legislative rewrite of section 437c, subdivision (f), that occurred in 1990. (See Stats. 1990, ch. 1561, § 2.) The main intent of this legislation was to stop the practice of summary adjudication of issues that do not completely dispose of a cause of action or a defense. (See Stats. 1990, ch. 1561, § 1.)

Previous case law had held that an order denying a motion for summary judgment was not final and had no preclusive effect (see, e.g., *Lumbermens Mut. Cas. Co.* v. *Vaughn* (1988) 199 Cal.App.3d 171, 177 [244 Cal.Rptr. 567]; *De La Pena* v. *Wolfe* (1986) 177 Cal.App.3d 481, 485 [223 Cal.Rptr. 325]) and that motions for summary judgment can be renewed at any point (see *Strick* v. *Superior Court* (1983) 143 Cal.App.3d 916, 921 [192 Cal.Rptr. 314]).

In a subsequent amendment to the statute, the Legislature inserted paragraph designations to subdivision (f) of section 437c. (Stats. 1993, ch. 276, § 1.) The pertinent statutory language is now found in section 437c, subdivision (f)(2).

by section 437c, subdivision (f), to justify the second motion. The record, however, does not bear this out.

Francine Pender was deposed on February 17, 1993, and Gisele Pender was deposed on February 18, 1993. Among other things, these depositions established that (1) the Penders were suing Radin for the amount of costs and fees they incurred in defending Radin's underlying lawsuit, (2) while neither of the Penders had paid any money to Radin to satisfy the $25,000 settlement, they had given up partial collection of a debt owed to them by Herbert Pender so that Herbert could pay the $25,000 to Radin, and (3) the Penders were satisfied with their attorney who negotiated the settlement agreement. Thus, between the time of Radin's first motion for summary judgment/ summary adjudication and her second motion, Radin had learned of new facts or circumstances through discovery. The newly discovered facts made the case of *Villa* v. *Cole* (1992) 4 Cal.App.4th 1327 [6 Cal.Rptr.2d 644], on which Radin relied for the first time in her second summary judgment/ summary adjudication motion, applicable to this lawsuit. In light of the trial court's references in its minute order to new case law justifying the renewal of the summary judgment/summary adjudication motion and to *Villa*,[3] the Penders make much of the fact that the opinion in *Villa* was filed on March 18, 1992, before Radin filed her first summary judgment/summary adjudication motion. The Penders argue because the opinion in *Villa* was filed *before* Radin's first summary judgment/summary adjudication motion it could not represent a *subsequent* "change of law" that would justify a renewal of a summary judgment/summary adjudication motion under section 437c, subdivision (f). However, the Penders' argument ignores the effect of the new facts or circumstances that were revealed through discovery *subsequent to* Radin's first motion; the newly discovered information justified the renewal of the summary judgment/summary adjudication motion under section 437c, subdivision (f), and brought *Villa*, a relatively new case, into play. In their reply brief, the Penders argue in conclusionary fashion that the trial court did not consider any newly discovered facts or circumstances because the minute order did not refer to any. We find this argument unpersuasive; the trial court was not required to outline the newly discovered facts or circumstances in its minute order. Because there was new information, the trial court did not abuse its discretion under the statute in allowing Radin to renew her motion.

---

[3]The minute order read in pertinent part as follows: "Defendant Irene Radin's motion for summary adju[d]ication of issue 1, to wit, whether the underlying action was determined in favor of plaintiff is granted, since (1) pursuant to CCP 437c(f) and in light of new case law, the court allows defendant to renew this motion for summary adjudication, and (2) there is no triable issue of fact[] that the underlying action was not terminated in plaintiff's favor. (See Judge Midlam's minute order of June 3, 1991, and *Villa* v. *Cole* [citation].)"

## II

The Penders contend summary judgment was wrongly granted because there was a triable issue as to a material fact, namely whether the termination of the underlying suit was favorable to the Penders. The contention is without merit.

Section 437c, subdivision (c), provides, in pertinent part, that a "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

We apply the standard of review for summary judgments set forth in *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]. (See also *Compton* v. *City of Santee* (1993) 12 Cal.App.4th 591, 595 [15 Cal.Rptr.2d 660].) The trial court determines whether triable issues exist examining the affidavits and evidence, including any reasonable inferences which may be drawn from the facts. (*People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 61-64 [118 Cal.Rptr. 438].) In examining the sufficiency of the affidavits, those of the moving party are strictly construed and those of the opposing party liberally construed. Any doubts as to the propriety of granting the motion are resolved in favor of the party opposing the motion. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

On appeal from an order granting summary judgment, the appellate court examines the facts presented to the trial court and independently determines their effect as a matter of law in light of the above principles. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

We begin by noting that the tort of malicious prosecution, which is disfavored because of its potential chilling effect on the willingness of people to report crime or pursue legal rights in court, consists of the following elements: "[A] plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498], quoting *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; see also *Sheldon Appel Co., supra,* 47 Cal.3d at pp. 872-873.) If any of these elements is shown to be missing after a proper evaluation of

the papers in a motion for summary judgment, the motion is to be granted. In the present case, we focus on the element of favorable termination.

■ In order for the termination of a lawsuit to be considered favorable to the malicious prosecution plaintiff, the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit. (*Lackner* v. *LaCroix* (1979) 25 Cal.3d 747, 750 [159 Cal.Rptr. 693, 602 P.2d 393].) " 'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution].' " (*Ibid.*, quoting *Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 150 [114 P.2d 335, 135 A.L.R. 775].) Where a proceeding is terminated other than on the merits, the reasons underlying the termination must be examined to see if the termination reflects the opinion of either the court or the prosecuting party that the action would not succeed. (*Stanley* v. *Superior Court* (1982) 130 Cal.App.3d 460, 464-465 [181 Cal.Rptr. 878].) Generally, a dismissal resulting from a settlement does not constitute a favorable determination because ". . . the dismissal reflects ambiguously on the merits of the action as it results from the joint action of the parties, thus leaving open the question of defendant's guilt or innocence. [Citation.]" (*Minasian* v. *Sapse* (1978) 80 Cal.App.3d 823, 827, fn. 4 [145 Cal.Rptr. 829].) After all, "[t]he purpose of a settlement is to *avoid* a determination of the merits." (*Villa* v. *Cole, supra,* 4 Cal.App.4th at p. 1336, italics in original.)

■ Here, the Penders cannot establish that Radin's lawsuit was terminated in their favor. Notwithstanding the fact that they did not pay Radin any of the $25,000 settlement, the Penders were parties to the settlement agreement, which was negotiated by their attorney. The Penders' attempts to disengage themselves from the settlement agreement are disingenuous; they maintain because they never agreed to pay money directly to Radin they were not parties to the settlement agreement. This argument ignores the language of Judge Midlam's order spelling out the terms of the settlement and dismissing Radin's lawsuit. Under the settlement agreement, Radin dismissed the lawsuit against all the defendants with prejudice and the parties were to bear their own costs and fees. Thus, by the terms of the settlement, the Penders waived fees and costs and thereby gave up something to get the lawsuit against them dismissed. On these facts, the Penders cannot show there had been a legal termination of the Radin lawsuit in their favor; rather, the Radin litigation was terminated by agreement without regard to its merits. Nor can the Penders raise a triable issue of fact with respect to whether they were parties to the settlement agreement. The conclusionary declarations by Attorney Stanley Prowse, Herbert Pender,

Francine Pender and Gisele Pender that the Penders were not parties to the settlement agreement fail in this regard in light of Judge Midlam's order and the indisputable fact that the settlement was negotiated by Radin's attorney and the attorney representing the Penders. Herbert Pender at that point was representing himself in propria persona; Attorney Prowse was representing the Penders and was acting with their authority in negotiating the settlement.

In *Villa* v. *Cole, supra,* 4 Cal.App.4th 1327, the Court of Appeal found this type of settlement acts as a bar to a later malicious prosecution. Radin, of course, urges us to apply *Villa*, while the Penders, quite naturally, argue *Villa* is not applicable to this case.

*Villa* involved a police officer employed by the City of Alameda who attempted to conduct a field sobriety test on a driver of an automobile and got into an altercation with a passenger in the automobile. The passenger sued the city, the police chief, Officer Villa and another officer. The city provided a defense for all the defendants, including Villa, and bore the costs of the representation. Ultimately, a settlement was negotiated in which the lawsuit would be dismissed with prejudice in exchange for the city's waiver of its right to seek reimbursement for its litigation costs and attorney fees. All the defendants agreed except Villa. The trial court approved the settlement and dismissed the lawsuit, over Villa's objection to the settlement. Villa, who did not take any action to set aside the dismissal order, subsequently filed an action for malicious prosecution, alleging, among other things, he had incurred costs and attorney fees in defending against the dismissed action. The Court of Appeal upheld the trial court's granting of summary judgment against Villa, finding that he could not show he had a favorable termination in the dismissed action:

"Villa argues that the underlying lawsuit was settled over his protest and objections, and that he did not participate therein. He contends that the settlement actually operated as a voluntary unilateral dismissal of himself by Seeterlin, and was thus a favorable termination on the merits. However, even where a defendant does not agree to a settlement made on his behalf, his or her dismissal from the lawsuit pursuant to that settlement will not be viewed as a favorable termination as long as it was a necessary condition to achievement of the overall settlement. Such a dismissal is not considered unilateral because it was required by the terms of a settlement agreement, and it will act as a bar to a later malicious prosecution action by the nonsettling defendant. [Citation.]

"That is the situation in this case. As appellant concedes, the terms of the settlement between the City and Seeterlin required the dismissal of all the

defendants, including Villa. The City could not realize the benefits of settling the litigation with Seeterlin unless the action against Villa was simultaneously terminated. Otherwise, the City would continue to be exposed to potential liability on Villa's behalf, both for defense and for indemnification, and would therefore still be a participant in the litigation, contrary to its aims in settling with Seeterlin and his attorney. In short, Seeterlin dismissed Villa from the lawsuit because it was necessary to effect the settlement with the City. Such a termination does not necessarily reflect Seeterlin's opinion that his action against Villa lacked merit, and thus does not qualify as a favorable termination for purposes of a malicious prosecution action. [Citation.]

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Villa asserts the City could not settle on his behalf and could not claim to represent him because he never requested such representation. The contention is without merit. A party may not voluntarily accept the benefits of a settlement negotiated and accepted on the party's behalf by an attorney, and at the same time disavow the settlement to the extent it is against his or her perceived interests. [Citations.]

"Here, Villa accepted all the benefits of the City's representation of him, and of the settlement that terminated the lawsuit against him. . . . In short, while accepting the benefits of his dismissal, Villa did nothing to set aside or repudiate the settlement of which that dismissal was a part. . . . Villa may not now disavow that settlement, having effectively ratified it by accepting its benefits." (4 Cal.App.4th at pp. 1336-1337.)

We agree with Radin that *Villa* is dispositive. To be sure, there are facts that distinguish *Villa* from this case. As the Penders correctly point out *Villa* involved the issue of indemnification and attorney fees, with the city providing indemnification for Villa and paying his attorney fees and costs. The Penders would have us limit *Villa* to such situations. However, the issue of indemnification was not crucial to the result in *Villa*. What was crucial is that Villa was dismissed because his dismissal was necessary to effect the settlement; the dismissal of Villa did "not necessarily reflect Seeterlin's opinion that his action against Villa lacked merit, and thus does not qualify as a favorable termination for purposes of a malicious prosecution action." (*Villa* v. *Cole, supra,* 4 Cal.App.4th at p. 1336; see also *Haight* v. *Handweiler* (1988) 199 Cal.App.3d 85, 89 [244 Cal.Rptr. 488] ["Since Godes [plaintiff in underlying action] considered the total monies offered him by Haight's codefendant's fair compensation for his injuries, Godes had no

reason to pursue the action further against Haight; and Haight's dismissal was a condition of the settlement with Gergen. Such a termination does not necessarily reflect Godes's opinion that his action against Haight lacked merit and thus does not qualify as a favorable termination in the context of a malicious prosecution action."].) Here, too, the dismissal of the Penders was necessary to effect the settlement; these two Penders in turn gave up something—fees and costs—to effectuate the settlement. The termination of Radin's lawsuit, having been accomplished in this manner, did not reflect Radin's opinion that her lawsuit against the Penders lacked merit.

*Villa* also is distinguishable because Villa vehemently opposed the settlement and made his disagreement well known. Here, the Penders never objected to the terms of the settlement or that it was negotiated without their knowledge. This distinction is of no significance. "[E]ven where a defendant does not agree to a settlement made on his behalf, his or her dismissal from the lawsuit pursuant to that settlement will not be viewed as a favorable termination as long as it was a necessary condition to achievement of the overall settlement." (*Villa* v. *Cole, supra,* 4 Cal.App.4th at p. 1336.) Also, this case differs from the facts of *Villa* in that Villa complained that the city did not adequately represent him, while the Penders had "no problems" with their representation by Prowse, who negotiated the settlement. Again, this is a de minimis distinction.

Here, but for the Penders' waiver of fees and costs, the settlement would not have been effectuated. Thus, the Penders gave up something in order to secure their dismissal from Radin's lawsuit; namely, they gave up the right to seek attorney fees and costs in connection with the dismissal they received. This point is exaggerated by the revised claim of compensatory damages in their malicious prosecution lawsuit, where they seek those same fees and costs. Having waived those fees and costs in order to effectuate a settlement, the Penders cannot have a second chance to claim them.

The termination of Radin's lawsuit was a result of an agreement. The Penders were a party to the agreement, and they may not disavow that agreement.[4] There simply is no triable issue of fact with respect to the Penders being part of the settlement agreement. The settlement agreement was not on the merits. Accordingly, the Penders did not establish that Radin's lawsuit was terminated in their favor, and the motion for summary judgment was properly granted.

---

[4]Like the plaintiff in *Villa*, the Penders did not attempt to set aside the settlement and dismissal of the underlying lawsuit.

## DISPOSITION

The judgment is affirmed. The request for sanctions is denied. Radin is entitled to costs on appeal.

Kremer, P. J., and Nares, J., concurred.

A petition for a rehearing was denied May 6, 1994, and appellants' petition for review by the Supreme Court was denied June 22, 1994.